Corporation v. Wayne County Employees Retirement System. We'll begin with that one. We've given I think five minutes per side on that. Thank you. So Mr. Bennett, you go first. Let me just make sure everybody's ready. Judge Cabranes, you're all set? Absolutely. Good. And Judge Gonzales, you're ready? I'm ready. Okay. The floor is yours. Thank you. And may it please the Court, we have filed a petition under Rule 23F asking you to grant us permission for leave to appeal a class certification ruling in a securities fraud case. You have a lot of discretion under 23F, but I think under the case law we're looking at issues that have a compelling need for you to step in at this stage and whether something is important to class actions. And we think that we have met that in this particular case because it's a unique but emerging area of the law. What we have is a securities fraud allegation that where the district court held that we didn't omit anything from our public statements, didn't misrepresent anything, but because we as the issuer of our own shares purchased shares in the open market, which then became treasury shares, that we can be liable under an insider trading theory. And then after that held in the context of ruling on class cert, that every person who And so those questions have not been decided by this Court before. And I think we're seeing more of these types of cases that could use guidance because the Supreme Court recently held that under a pure omission case you can't bring those under 10b-5. And so what we're seeing in this filed are people alleging that, well, you can bring a pure omission case in this context because they're looking at companies who repurchase shares in the market and saying that that then triggered a duty to disclose. And so we're seeing that this is an emerging, important question. It might be interesting and emerging and all those things, but I guess that's usually not enough to get you into the Court of Appeals before there's a final judgment. And so is there anything in the record to suggest that this is going to be, that us not taking this now means that somebody's going to go broke? It means that somebody is going to go broke. I guess it depends on the way the cases talk about it is it creates this huge incentive to have it not get to the Court of Appeals because there's such a huge incentive to settle because of the amount and controversy goes through the roof compared to what it was. So there is a substantial... But I mean that would be true of just about any securities class action if that were the case, right? I guess I'm trying to figure out what's unique to this one that means if we wait for the dust to clear on the district court's rulings on things like motion to dismiss or summary judgment that you're going to be irreparably harmed effectively. Well, I think that she has ruled, the district court has ruled on a motion to dismiss and that's kind of what got us here. We're currently at the summary judgment stage and Dawbert stages below, but there's such a huge difference in the case that, in our view, at least makes it appropriate under 23F. And I would just point your honor to the Hevesi case versus Citigroup where they say that one thing you're supposed to look at in whether to take a case at the interlocutory stage is whether it would have a potentially coercive effect on securities class actions to a new group of corporate and individual defendants. And we think that that does it because basically what we're saying here is that every single issuer in the market who has material information cannot buy shares in a buyback. And so I would say that that case is recognizing that 23F is a good use of resources where we're expanding liability to essentially every omission case now becomes actionable for anyone who's buying their own shares in the market, which I think meets the Hevesi case. And then they note in that case as well that this issue, which is important and new in an expansion of liability, is likely to escape review because very few securities class actions are litigated to conclusion because of the risk of liability. So we think that that Citigroup case, which is from this court talking about 23F, is what we're right in the middle of. I'm not telling you that some of the established guidelines of Hevesi versus Citigroup, when you have a claim that is expanding into a whole new area of liability and where it has a huge impact on the damages that are associated, that that's a good use of 23F. Right. But, I mean, it would be a 23F. It would be about class certification, right? It wouldn't be about going to the merits of the claim, except indirectly. So, I mean, if you've got a summary judgment motion that's nearly happening, isn't that a better result for you to sort of get a good ruling in the district court on that? It could take a while to get just a class cert ruling here. Yes, Your Honor. I think the problem with that is that the court, at least as it's being positioned, in opposition to our summary judgment, the plaintiffs are saying that we're asking the court to revisit a prior ruling. And one of our points in this petition is that, you know, that it was an error to make such a blanket, clear statement of what the damages are where the court did essentially reach the merits. I mean, the court held in a context of class cert that damages are not limited to profits gained and losses avoided by the defendant. So we're here in class cert because in the context of deciding class cert, the trial court made that blanket merits-based ruling that is now being carried with the case, where the plaintiffs are arguing in response to summary judgment that the court has already decided this, and in response to our daubers on their experts, they're saying you've already decided this. So I think now is the time, as opposed to summary judgment or certainly after trial. All right. Let me... No, please, Your Honor. Yeah. This is before Judge Denise Cote, is that right? That's correct. She doesn't have a reputation for being slow in deciding matters. What exactly... Maybe you can tell us something about the stage of the proceedings. Where are you, and where is she taking you, and when? Certainly, Your Honor. Where we are on the proceedings is that we filed motions for summary judgment and daubers on December 22nd, 2025. Responses to those were just filed, and the motions will be fully briefed. The summary judgment motion will be fully briefed on February 23rd of 2026. February 26th. Is there a reason why it should take a year? I'm just... I think it is 2026 now. I've been making the same mistake on my checks, but it will be fully briefed in February of this year. So a week and a half. Two weeks. Two weeks. Today's the day. So two weeks. And, of course, there's no... On our behalf, I guess I would say that there is this mechanism for an appeal under 23-F that I think is more relaxed than trying to get an interlocutory ruling of summary judgment ruling. You can have a... It's entirely possible that you could have a decision on motions for summary judgment within the next couple of months, right? I think that's fair. The only issue I would mention is that it is true that the plaintiffs, in response to our summary judgment, are saying, you've already decided this in this context of the Class Cert ruling, and so I'm concerned from our behalf that this would be the best procedure or mechanism to get a look at this important issue, because it is a blanket holding, and it seems to be floating, you know, taking us all the way through summary judgment and possibly trial and jury instructions and so on. All right. Well, thank you, Mr. Bennett. Thank you, Your Honor. For Mr. Zweig or Zweig, or something else? Zweig, Your Honor. Zweig. Okay. Mr. Zweig, you may proceed. Thank you, Your Honors. This is not the rare case justifying an interlocutory appeal under Rule 23F for the simple reason that there are no significant individualized issues here that could possibly predominate over the many common issues, and predominance under Rule 23B3 is, in fact, what we're here to discuss, not, for example, the merits of the case. Now, under the out-of-pocket damages methodology that we've set forth, damages can clearly be assessed on a class-wide basis, and there's no dispute about that. But even if a disgorgement cap did apply as the defendants wrongly claim, damages can still be assessed class-wide. Now, that's certainly true if disgorgement limits damages all the way down to zero, as the defendants contend. But if disgorgement is more than zero, this Court specifically held in the Elkind case that in super-TIP-E cases where a disgorgement cap does apply, damages are distributed on a pro-rata basis. That's at page 172 of that decision. Quote, should the intervening buyers, because of the volume and price of their purchases, claim more than the TIP-E's gain, their recovery, limited to that gain, would be shared pro-rata, unquote. So with essentially no significant individualized issues to weigh against the many common issues, such as materiality, scienter, and so forth, predominance of common issues under Rule 23b3 is clear. And on the merits, which I would submit this Court should not reach, nonetheless, district courts have a great deal of flexibility in fashioning remedies under 10b, and I would submit that the egregious facts here demonstrate the wisdom of that. The defendants in this case essentially tore up National Instruments' existing capital allocation plan to engage in massive buybacks without disclosing the high premium all-cash offer that National Instruments had received from Emerson, and they did so just days after learning of Emerson's toehold investment in National Instruments. Now, the merits on damages we would submit should be decided at summary judgment or at trial where that decision will be binding on the class. At this stage, by contrast, a merits decision would not be binding on the class. The Supreme Court was clear about that in Smith v. Bayer in 2011, and another class member could just raise the same claims elsewhere. What the defendants are engaged in here, I would say with respect, is a bit of a bait-and-switch. The defendants invited the district court to make premature merits decisions at class certification, which the district court, to be clear, did not do. It said that damages are capable of measurement on a class-wide basis. That's from page A-17. But now the defendants are essentially faulting the district court for responding to their arguments at all. I would submit that does not justify interlocutory review. My friend mentioned that this is some new wave of cases or something like that. I would submit that's not the case at all. The disclose or abstain principle that is behind insider trading liability goes all the way back many decades, all the way back to the Texas Gulf Sulphur case from the 1960s. But when companies do buybacks, buybacks are very common, they are almost always done pursuant to a 10b-5-1 plan, which a company is required to put in place when they don't have material nonpublic information. That's a very powerful safe harbor that companies routinely take advantage of. In this case, by the way, it was a 10b-5-1 in the middle of their repurchases, well after they had obtained the material nonpublic information. There was a question earlier about will this company go broke, depending on the verdict here. There's no possibility of that. Emerson is a little facetious, and that's not the requirement. But it is, you know, the consideration is whether or not granting class cert is going to effectively prevent the defendants from getting a hearing on their issues, right? Because they'll be compelled to settle not on the merits, but for other reasons. I understand, Your Honor. Importantly, Judge Coate restricted the class period quite significantly. It's only a couple of weeks. It's only a few weeks, and I think that demonstrates a few things. First of all, the rigor of her analysis. Secondly, it means that it is not a death knell case. It wouldn't have been anyway, but it certainly isn't now. And it also, that contemporaneous trading requirement that Judge Coate was applying and limiting the class period directly links the defendant's trading and the damages here, which is what's ultimately required under Comcast. Comcast requires that the, it's talking about a situation where if you need a class-wide model to show that there is no case, you can't just do that. And that's a case where the defendant's claim is necessary and has to be linked to the theory of liability. However, in this case, even if the defendants are right on everything they say in their brief, there still aren't going to be individualized issues. It just means that a cap is applied, which, by the way, occurs any time there's a settlement. Almost invariably, a settlement of a case is going to be for less than maximum damages. And in those cases, the claims administrators simply distribute the damages on a pro rata basis. And that's exactly what would happen under Elkind. And indeed, that's what happened in the Kaplan v. Sack Capital case that the defendants cite. At class certification, the court applied that pro rata principle to a 28 case, which where a disgorgement cap does apply, and held that the class should be certified. And we would submit that the district court was right to do the same thing here.